UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:05-CV-523

| | | |
|---|---|---|
| THOMAS R. STORKAMP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| PETE GEREN, | ) | |
| Secretary of the Department of the Army, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the renewed motion [DE-46] of Defendant, Pete Geren, Secretary of the Department of the Army, for summary judgment. The plaintiff, Thomas R. Storkamp has responded [DE-53] and Defendant has replied [DE-57]. This matter is now ripe for disposition.

## I. FACTS

Plaintiff Thomas R. Storkhamp is a licensed practical nurse ("LPN") and has worked for Defendant since 1997. On November 17, 2000, Storkhamp sustained a compression fracture in his back while working for Defendant in the Surgical Center in the Department of Nursing at Womack Army Medical Center ("WAMC"). Due to the injury, Storkhamp was out of work until March 2001. In March, Storkhamp's doctors allowed him to return to work subject to the restriction that he could not lift or push more than twenty pounds. On June 1, 2001, Storkhamp received an updated medical profile indicating that he could not bend, stand or sit for prolonged periods of time. Despite these restrictions, Storkhamp continued to work in the Surgical Center, first in the pre-operative holding area as an LPN, and later in the surgical laboratory, but was assigned duties that did not violate his

restrictions. It was unknown at the time whether Storkamp's restrictions were permanent or temporary, but his doctors stated that the injury would need to be monitored for approximately one year in order to determine his prognosis for recovery. [DE-5] Mem. in Supp. Mot. Summ. J., Exh. 1, p. 43.

In July 2001, Storkhamp was examined by Dr. George Ball because his knee began to "lock up." Dr. Ball then restricted Storkhamp to standing no more than five to ten minutes per hour and prohibited him from squatting or climbing. Storkhamp continued to work in the Surgical Center holding unit until he had knee surgery on August 13, 2001. Following surgery, Storkhamp was out of work for five weeks during recovery. Dr. Allen Jones allowed Storkhamp to return to work on September 28, 2001, subject to new restrictions that he could do only light duty work, had to use crutches and a brace, and could stand for no more than fifteen minutes per hour. Storkhamp also was required to elevate his foot for forty-five minutes every hour. When Storkhamp returned to work after his knee surgery and ankle injury, he was temporarily detailed to the Family Practice Clinic for a period of 120 days.

On November 2, 2001, Dr. Jones modified Storkhamp's restrictions, allowing him to reduce the time he was required to elevate his leg to only ten minutes per hour. In December 2001, Storkhamp began seeing Dr. Serano for his back injury. Dr. Serano evaluated Storkhamp's back and issued a medical profile restricting him from pushing lodaded gurneys and lifting more than ten pounds. Shortly thereafter, Dr. Ball reevaluated Storkhamp's knee and ankle injuries and restricted Storkhamp from pushing or squatting and required him to use a cane.

During this time period, Sergeant First Class Kenneth Washington was Storkhamp's direct supervisor. On January 17, 2002, Washington informed Storkhamp that his medical restrictions raised concerns that he could not safely perform the full range of duties required

2

of an LPN in the surgical environment. Washington asked Storkhamp to provide a determination from one of his doctors regarding whether he could perform the duties of his nursing position and identify what accommodations, if any, Storkhamp needed in order to perform his traditional LPN duties in the SurgiCenter.

On February 4, 2002, Storkhamp responded to Washington's inquiry and indicated that he was requesting accommodations for his back and knee injuries. Specifically, Storkhamp requested a stool to allow him to alternate between sitting and standing and asked for assistance when moving equipment weighing over ten pounds. Alternatively, Storkhamp asked to be transferred to the Pre Admission Unit to work as an Interview Nurse.

Washington informed Storkhamp that he needed to provide more specific medical information before different accommodations could be considered. Washington asked Storkhamp to have his doctor determine whether his medical condition was permanent or temporary and the extent to which it interfered with his ability to perform his job. Storkhamp subsequently provided documentation from Dr. Ball stating that all of the physical limitations pertaining to his knee were removed. Storkhamp also submitted documentation from Dr. Serano changing his limitation to allow for occasional lifting and carrying of objects weighing up to twenty pounds.

Defendant requested that a WAMC Occupational Health Physician review Storkhamp's medical history and asked the physician to recommend whether Storkhamp's medical conditions would allow him to perform the essential functions of his nursing position. The Occupational Health Physician, Dr. Amanda Trimpey, could not determine whether Storkhamp's back condition was temporary or permanent. Dr. Trimpey did conclude that Storkhamp could not perform the essential functions of his nursing position

3

under Dr. Serano's restrictions, as Storkhamp was not able push patients on gurneys or reposition patients in their beds due to his weight lifting restriction of twenty pounds. Storkamp does not dispute Dr. Trimpey's assessment, just that she was unqualified to make it because she did not work at the Surgical Center. [DE-53] Pl. Resp. Def. Mot. Summ. J. (unnumbered at 4).

On April 29, 2002, Storkhamp contacted Defendant's personnel office and explained that he disagreed with Dr. Trimpey's assessment. Specifically, Storkhamp indicated that he believed he could perform the essential functions of his nursing position without having to lift more than twenty pounds. On May 7, 2002, Storkhamp submitted a memorandum from Dr. Jeffrey Warhaftig indicating that his condition was permanent.

On May 13, 2002, Dr. Serano completed a Certificate of Medical Examination. On the Certificate, Defendant had indicated that the essential functions of Storkhamp's position require lifting and carrying between 15 and 44 pounds. Dr. Serano responded by indicating that Storkhamp could not lift or carry more than twenty pounds and that these restrictions were permanent.

Defendant's personnel then asked Storkhamp to submit a resume to determine if he could be transferred to another position at WAMC. Storkhamp initially refused to provide his resume, but ultimately did so on April 29, 2003. Defendant then attempted to determine whether Storkhamp could safely perform the duties of several positions, but concluded that Storkhamp could not perform the duties of an LPN in the Surgical Center wards with or without accommodation. Defendant offered Storkhamp a permanent nursing position in another part of WAMC and on October 21, 2004, Storkhamp accepted the position of Practical Nurse, GS-6, at Clark Health Clinic. Defendant modified the physical demands of this position by lowering the maximum lifting requirement to twenty pounds.

## II. PROCEDURAL HISTORY

On April 16, 2002, Storkhamp filed a formal complaint with Defendant's Equal Employment Opportunity Office and the United States Equal Employment Opportunity Commission, Office of Federal Operations, rendered a decision on April 25, 2005. Storkhamp initiated the instant action in this court on July 29, 2005, alleging that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* by discriminating against him on the basis of his gender and disability and seeking relief including compensatory damages, "retroactive correction of his records to indicate continuous employment in the Ambulatory Surgery Unit," "all pay and allowances, including differentials and retention bonuses, he would otherwise have received had he continuously been employed at the Ambulatory Surgery Unit," and attorney's fees. [DE-1] Compl. ¶ 2-6.

Defendant filed a motion for summary judgment on January 26, 2006. [DE-5]. Storkhamp then filed eleven motions to extend the time to respond to Defendant's motion for summary judgment and Magistrate Judge David W. Daniel allowed each of these extensions. When Storkhamp filed his twelfth motion for an extension of time [DE-27] on May 23, 2006, Judge Daniel set the matter for a hearing on Monday, June 5, 2006. Storkhamp then filed two additional motions for an extension of time, but failed to appear for the hearing. Although Judge Daniel had not yet ruled on the twelfth, thirteenth or fourteenth motions for extension of time to respond, Storkhamp filed his response to Defendant's motion for summary judgment on June 6, 2006. [DE-33]. On June 12, 2006, Judge Daniel entered an order denying Storkhamp's twelfth, thirteenth and fourteenth motions to extend the time to respond due to Storkhamp's failure to attend the hearing and to establish good cause for the extensions. [DE-32].

On May 21, 2007, this court issued an Order [DE-37] granting in part and denying in part Defendant's motion [DE-5] for summary judgment or in the alternative, for partial dismissal. Specifically, the court allowed the Defendant's motion as to Storkamp's claims for compensatory damages and to his claims for discrimination under Title VII, but denied, without prejudice, the Defendant's motion as to discrimination under the Rehabilitation Act. The court noted that the Defendant was free to renew its motion at the close of discovery. Because Storkamp did not file his response within the time set forth by Magistrate Judge Daniel, the court declined to consider his response when reviewing Defendant's first motion for summary judgment and relied only on the Defendant's recitation of the facts in issuing its May 21, 2007 Order. [DE-37] May 21, 2007 Order p. 6; *see also* Fed. R. Civ. P. 6(b). On June 12, 2007, the Defendant filed its timely Answer to Storkamp's complaint. The period of discovery for this case ended on October 5, 2007, without indication from the record as to whether any discovery was gathered by either party.

On November 9, 2007, the Defendant filed its instant Motion for Summary Judgment [DE-46]. After two extensions of time to file his response, Storkamp filed his Response to the Defendant's motion on January 15, 2008 [DE-53]. Therein, Storkamp states that, because the "remaining issue of 'essential functions' . . . was adequately addressed in response [sic] the Defendant's first summary judgment motion, his June 6, 2006 response is being resubmitted almost entirely." [DE-53] Pl. Resp. Def. Mot. Summ. J. (unnumbered at 1). On January 29, 2008, the Defendant filed its Reply [DE-57] to Storkamp's response. Accordingly, this matter is now ripe for disposition.

### III. STANDARD

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*,

6

477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden initially of coming forward and demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When making the summary judgment determination, the facts and all reasonable inferences must be viewed in the light most favorable to the non-movant. *Liberty Lobby*, 477 U.S. at 255. Once the moving party has met its burden, the non-moving party then must come forward and demonstrate that such a fact issue does indeed exist. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish any one of the essential elements of the party's claim on which he will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322-23.

Because Defendant's first motion for summary judgment [DE-5] was allowed in part as to Storkamp's claims for compensatory damages and claims under Title VII for gender discrimination, the last remaining issue to be determined under this standard is Storkamp's claim for discrimination under the Rehabilitation Act.

## IV. ANALYSIS

The Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.* provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity . . . conducted by any Executive agency." 29 U.S.C. § 794(a). To establish a cause of action for disability discrimination under the Rehabilitation Act, a plaintiff must establish his or her prima facie case by demonstrating: (1) that he has a disability within the meaning of the Act; (2) the employer had notice of the disability; (3) that with reasonable accommodation, he could perform the essential functions of the position; and (4) the employer refused to make such

7

accommodations. *See Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n. 11 (4th Cir. 2001); *Doe v. Univ. of Maryland Medical Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995). These factors are not mutually exclusive, rather each factor must be shown in order to allow a plaintiff to survive a motion for summary judgment. Once the plaintiff has met its prima facie case under the Rehabilitation Act, only then is the employer tasked with showing that the accommodation espoused by the plaintiff would cause the employer "undue hardship." *Davis v. Thompson*, 367 F. Supp. 2d 792, 803 (D. Md. 2005).

Based on the record at the time the court entered its May 21, 2007 Order, a genuine issue of material fact then existed which precluded judgment as a matter of law as sought by Defendant. [DE-37] May 21, 2007 Order, pp. 8-9. Since the court issued its Order, however, Defendant has moved again and come forward with additional facts to which Storkamp has responded. Now appropriately before the court, therefore, is Storkamp's response to the Defendant's first and second motions for summary judgment.[1] Therefore, it is with this more complete factual picture, presented by both sides, but viewed in the light most favorable to Storkamp, that this court now reviews the Defendant's renewed arguments that Storkamp cannot meet his prima facie case under the Rehabilitation Act.

In its May 21, 2007 Order, this court noted that, in its first motion for summary judgment [DE-5], the Defendant did not dispute the first two elements of Storkamp's claim under the Rehabilitation Act, that Storkamp was disabled or that the employer had notice of the disability. [DE-37] May 21, 2007 Order, p. 7. Although Defendant chooses now to dispute those elements of Storkamp's prima facie case in its instant motion for summary

---

[1] As Storkamp explains, he has chosen to resubmit his response to the Defendant's first motion for summary judgment "almost entirely" in lieu of writing a new response to the Defendant's renewed motion. [DE-53] Pl. Resp. Def. Mot. Summ. J. (unnumbered at 1).

8

judgment, for the reasons explained below, the court declines to examine those arguments in any depth herein.

The third element for a claim under the Rehabilitation Act requires a plaintiff to show that he is able, with or without accommodation to perform the essential functions of his job. *See Edmondson v. Potter*, 118 Fed. Appx. 726, 728 (4th Cir. 2004)(UP). The essential functions of a job may be defined according to the employer's judgment, written job descriptions, and what other employees in the same position do. *See* 42 U.S.C.S. § 12111(8). Defendant submits that the written description of the LPN's position in the Surgical Center requires "periods of standing and walking in order to assist patients that are in bed following surgery. Also required is the ability to lift, bend and stoop in assisting patients immediately following surgery." [DE-47] Def. Mot. Summ. J. p. 4. Defendant further maintains that lifting and carrying more than twenty pounds and pushing patients on gurneys are essential functions of an LPN assigned to the Surgical Center. Defendant explains, and Plaintiff does not dispute, that a daily part of Storkamp's duties, prior to his injuries, included the transport of patients on gurneys to and from surgery as he attended to pre and post surgical needs. *Id.* at p. 18; *see also,* Def. Ex. 25, p. 83. Also, in emergencies, a nurse must be able to reposition a patient if he is regurgitating or going into cardiac arrest. *Id; see also,* Def. Ex. 25, pp. 83-84. This repositioning is not uncommon in the post-surgical ward and, as Storkamp explains, may or may not involve turning the patient's upper body to clear his or her airway. *Id.* Given his weight limitations and inability to push a loaded gurney without assistance, Defendant argues that Storkhamp is not able to perform these essential functions of his LPN position in the Surgical Center.

Storkamp does not dispute that his permanent medical profile limits him to lifting less than twenty pounds, and prohibits him from pushing loaded gurneys without

9

assistance. [DE-47] Def. Ex. 25 p. 24. Storkamp does argue, however, that because Defendant allowed him to work in the holding unit of the Surgical Center even after his back limitations were imposed, the Defendant is precluded from now arguing that Storkamp is unable to perform the essential functions of an LPN working in the Surgical Center. [DE-53] Pl. Resp. Def. Mot. Summ. J. (unnumbered page 5). Essential to Storkamp's argument is the belief that, because he was allowed to work in the Surgical Center while his limitations were more restrictive, and was not removed therefrom until after his injuries were deemed permanent, but were classified as less restrictive, the Defendant was obligated to allow him to stay on in the Surgical Center and was estopped from providing any alternative accommodation. *Id*. This argument is flawed for following reasons.

As stated above, the employer's judgment is given great consideration in the determination of what functions are essential to a particular position. 42 U.S.C.S. § 12111(8). Although a reasonable accommodation may, in fact, require the elimination of non-essential, or marginal duties, the Rehabilitation Act does not require the elimination of those deemed essential. *See Hall v. U.S. Postal Service*, 857 F.2d 1073, 1078 (6th Cir. 1988). Furthermore, simply because an employer chooses to temporarily accommodate an employee with a temporary disability by eliminating essential duties, the employer may not be required to continue such an accommodation to infinity. *See Winfred v. City of Chicago*, 259 F.3d 610, 616 (7th Cir. 2001) (If an employer bends over backwards to accommodate a disabled worker . . . it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation)(internal citations omitted).

Here, Storkamp's employer, WAMC, considers the essential functions of an LPN position in the Surgical Center to include lifting, pushing, and pulling greater than twenty

10

Case 5:05-cv-00523-F   Document 61   Filed 02/08/08   Page 10 of 13

pounds on a daily basis. Storkamp has not disputed these duties. However, the only way for Storkamp to refrain from accomplishing these duties is either for his employer to eliminate these essential duties, or, for his employer to permanently station Storkamp in the holding unit.[2] The holding unit is a surgical LPN position through which all other surgical LPN's rotate along with the other surgical wards in the center. In a similar case, one court noted that "if an employer has a legitimate reason for specifying multiple duties for a particular job classification, duties the occupant of the position is expected to rotate through, a disabled employee will not be qualified for the position unless he can perform enough of these duties to enable a judgment that he can perform its essential duties." *Miller v. Illinois Dep't of Corr.*, 107 F.3d 483, 485 (7th Cir. 1997).

Although Defendant allowed Storkamp to work in the holding unit of the Surgical Center during the time following his back injury while awaiting Storkamp's permanent medical profile, this was merely a temporary allowance. The Rehabilitation Act does not require the Defendant to continue an accommodation that eliminates essential functions of his pre-injury job indefinitely, especially when another reasonable accommodation has been provided. *See Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1528 (11th Cir. 1997)

---

[2] This is the accommodation that Storkamp requests. In fact, he has submitted the declarations of several LPNs verifying his ability to perform the holding unit duties. [DE-53] Pl. Resp. Def. Mot. Summ. J. (unnumbered declarations). While it was unclear from the record at the time Defendant filed its first motion for summary judgment exactly what accommodations Defendant had made which allowed Storkamp to remain in the surgical unit with his temporary medical restrictions, it is now clear both from the Defendant's and Storkamp's pleadings and recitation of the facts that Defendant modified some of the essential functions of Storkamp's LPN position by allowing him to remain in the holding unit without rotating through the other surgical LPN positions for a period of time. As explained above, by making this temporary allowance for Storkamp, Defendant has not conceded the reasonableness of the accommodation as required by the Rehabilitation Act. *See Winfred*, 259 F.3d at 616.

11

(Employer not required to continue to excuse detective with visual impairment from collecting evidence at crime scene.).

The fourth element of a prima facie case under the Rehabilitation Act, after a showing by the plaintiff that he can perform essential functions of his job with accommodations, is a showing that the employer has refused to accommodate. Assuming *arguendo* that Storkamp can perform the essential functions of his job with accommodation, the Defendant has presented evidence that Storkamp's physical limitations have been reasonably accommodated such that he has been able to remain employed by WAMC.

Currently Storkamp works as an LPN for Defendant in the Family Practice Clinic where accommodations have been made so that Storkamp may qualify for the position now that his permanent medical profile has been ascertained. Storkamp receives the same pay that he did in the Surgical Center, and also received two retention bonuses while Defendant attempted to find a reasonable accommodation for Storkamp's permanent medical profile. The fact that Storkamp would have preferred the accommodation previously provided by Defendant to continue instead of the accommodation he is now provided does not merit remedy by the Rehabilitation Act. *See Ansonia Bd. Educ.v. Philbrook*, 479 U.S. 60, 68 (1986) (We find no basis in either the statute or its legislative history for requiring an employer to choose any particular reasonable accommodation. By its very terms the statute directs that *any* reasonable accommodation by the employer is sufficient to meet its accommodation obligation) (emphasis added). As the Supreme Court notes, the plain language of the act requires only a reasonable accommodation, not the one preferred by the plaintiff. 29 U.S.C. § 791, *et. seq.*

Accordingly, because the plaintiff is not entitled to the specific accommodation he prefers, one which would require Defendant to eliminate essential functions of his pre-injury position, Storkamp cannot meet the fourth element of the prima facie case under the Rehabilitation Act, that the employer refuses to make a reasonable accommodation.

Based on the facts on the record now before the court, Storkamp has not presented sufficient evidence from which a reasonable juror could conclude that he is able to perform the essential functions of his job with accommodation as is required in order to establish a prima facie claim under the Rehabilitation Act. Rather, he has attempted to display for the court that there is a position in the Surgical Center that he can fill so long as his employer eliminates essential functions of his pre-injury job. As explained above, such an accommodation is not required by the reasonableness standard of the Rehabilitation Act. It is for these reasons that the court ALLOWS the Defendant's motion for summary judgment in whole.

## V. CONCLUSION

Finding no genuine issue of material fact, the court therefore ALLOWS Defendant's Motion for Summary Judgment [DE-47] in whole. Accordingly, the parties' Joint Motion to Continue [DE-60] is DENIED as moot. Any other pending motions are also denied as moot. The Clerk of Court is DIRECTED to enter judgment and to close this case accordingly.

SO ORDERED.

This the 5 day of February, 2008.

JAMES C. FOX
Senior United States District Judge